[Civ. No. 55992. Second Dist., Div. Five. May 29, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
E.W.A.P., INC., et al., Defendants and Respondents.

**COUNSEL**

Burt Pines, City Attorney, George C. Eskin, Chief Assistant City Attorney, Noel R. Slipsager, Richard M. Helgeson, Assistant City

Attorneys, and Maureen R. Siegel, Deputy City Attorney, for Plaintiff and Appellant.

Brown, Weston & Sarno, Fleishman, Brown, Weston & Rohde, David M. Brown and G. Randall Garrou for Defendants and Respondents.

OPINION

ASHBY, J.—The People appeal from an order of dismissal following the sustaining of a demurrer to the People's complaint seeking an injunction and assessment of civil penalties for unlawful business practice as defined by former Civil Code section 3369, now Business and Professions Code section 17200.[1]

Section 17200 provides: "As used in this chapter, unfair competition shall mean and include *unlawful*, unfair or fraudulent *business practice* and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." (Italics added.)

Section 17202 states: "Notwithstanding Section 3369 of the Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition." Sections 17203 and 17204 authorize the Attorney General, any district attorney, and certain city attorneys to bring an action to enjoin an act of unfair competition.[2] Sections 17206 and 17207 authorize the assessment of civil penalties for violations of this chapter and violations of any injunction issued pursuant to section 17203. Section 17205 provides: "Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state."

According to the allegations of the complaint, which must be accepted as true for purposes of a demurrer, defendant E.W.A.P., Inc. (Erotic Words and Pictures, Inc.), is a corporation organized and existing under the laws of California with its principal place of business in

---

[1] Unless otherwise indicated, all section references hereafter are to the Business and Professions Code.

[2] The present action is brought by the City Attorney of Los Angeles.

Chatsworth. The named individual defendants are officers of the corporation. At least since April 12, 1977, and continuing to the date of filing of this complaint (Apr. 7, 1978) defendants have been engaged in commercially distributing and possessing for commercial distribution obscene matter as defined in Penal Code section 311, subdivision (a). Specifically, defendants have distributed or possessed for distribution various copies of 44 named obscene 8-millimeter films and various copies of 3 named obscene magazines. Such commercial distribution and possession for commercial distribution of each of these films and magazines is an unlawful business practice in that distribution and possession for distribution of obscene matter is prohibited by Penal Code section 311.2.[3]

The complaint seeks to enjoin defendants from commercially distributing or possessing for commercial distribution copies of the films and magazines identified in the complaint and seeks the assessment of a civil penalty of $2,500 pursuant to Business and Professions Code section 17206 for each act of commercial distribution or possession for commercial distribution of each copy of the films and magazines.

The trial court sustained a demurrer to the People's complaint, apparently because the People failed to allege specifically an injury or damage to consumers or competitors of defendants.[4]

## Discussion

The People contend the complaint adequately alleges an unlawful business practice within the meaning of section 17200. We agree. Since the addition of the word "unlawful" to the predecessor statute in 1963, this section has been liberally construed so as not to be limited to traditional anticompetitive practices. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 111-113 [101 Cal.Rptr. 745, 496 P.2d 817]; *People* v. *McKale* (1979) 25 Cal.3d 626, 631-632 [159 Cal.Rptr. 811, 602 P.2d 731]; see also *Diaz* v. *Kay-Dix Ranch* (1970) 9 Cal.App.3d

---

[3]Penal Code section 311.2 provides in pertinent part: "(a) Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state possesses, prepares, publishes, or prints, with intent to distribute or to exhibit to others, or who offers to distribute, distributes, or exhibits to others, any obscene matter is guilty of a misdemeanor."

[4]The complaint alleges generally that defendants "have competed unfairly and unlawfully to the damage and injury of the public, as competitors and consumers." The People declined to amend the complaint upon sustaining of the demurrer.

588, 591-593 [88 Cal.Rptr. 443].) Our Supreme Court has stated that the purpose of the amendment was to "'extend the meaning of unfair competition to anything that can properly be called a business practice and that at the same time is forbidden by law.'" (*Barquis* v. *Merchants Collection Assn., supra,* 7 Cal.3d at pp. 112-113; *People* v. *McKale, supra,* 25 Cal.3d at p. 632.)

The distribution or possession for distribution of obscene matter is unlawful under Penal Code section 311.2. When such conduct is engaged in as a "business practice" it comes within the meaning of section 17200. The complaint in this case adequately alleges such conduct as a business practice. It alleges that defendant E.W.A.P. is a corporation organized under the laws of California with a principal place of business at a designated address in Chatsworth. Certain individual defendants are alleged to be officers of the corporation. The complaint alleges that the defendants have engaged in "commercial" distribution or possession for "commercial" distribution of obscene matter over a period of approximately a year, and the complaint specifically describes the numerous films and magazines involved. A business practice has been adequately alleged. (See *Barquis* v. *Merchants Collection Assn., supra,* 7 Cal.3d at p. 113; *People* v. *McKale, supra,* 25 Cal.3d at p. 632.)

The Legislature has determined that trafficking in obscene matter is prohibited. When engaged in as a business practice, it is an unlawful business practice. It is not necessary for the People additionally to allege that it is anticompetitive or harmful to the consumer of such products.[5]

In *People* v. *K. Sakai Co.* (1976) 56 Cal.App.3d 531 [128 Cal.Rptr. 536], the District Attorney of San Francisco brought an action under former Civil Code section 3369 to enjoin the corporate owner and operators of a grocery store from selling canned whale meat in violation of certain sections of the Penal Code which prohibited importation for commercial purposes or possession with intent to sell the parts of certain endangered species of animals. The purpose of the law was not

---

[5]Such an argument could be made, however. A legislator may reasonably believe that obscene matter is or may be harmful to the consumer of it, in addition to society as a whole. (*Paris Adult Theatre I* v. *Slaton* (1973) 413 U.S. 49, 57-69 [37 L.Ed.2d 446, 457-464, 93 S.Ct. 2628].) Defendants' conduct is also arguably anticompetitive. By being willing to go further than the law allows, defendants may gain advantage over their competitors who stay within the limits of the law. (See 2 Callmann, Unfair Competition, Trademarks and Monopolies (3d ed. 1968) § 63.1, pp. 581-583.)

primarily to protect the consumer or competitors, but to preserve the environment for the benefit of all citizens by eliminating the market for products of these species. (*Id.*, at pp. 535-537.) Nevertheless, the action under former Civil Code section 3369 was upheld.[6]

Traditionally, courts of equity have declined to use the power of injunction to enforce the penal laws. However, the fact that certain conduct is a crime will not prevent the issuance of an injunction if the conduct also falls within a specific statute authorizing an injunction. (*People* v. *Lim* (1941) 18 Cal.2d 872, 879-882 [118 P.2d 472] (gambling establishment, nuisance); *People* ex rel. *Busch* v. *Projection Room Theater* (1976) 17 Cal.3d 42, 49-53 [130 Cal.Rptr. 328, 550 P.2d 600] (exhibition of obscene films, nuisance); *Weis* v. *Superior Court* (1916) 30 Cal.App. 730, 731-732 [159 P. 464] (indecent exhibition, nuisance).) Here the unfair competition law specifically authorizes injunctions and civil penalties in addition to the remedies of the penal law. Section 17202 provides: "Notwithstanding Section 3369 of the Civil Code,[7] specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition." Section 17205 provides: "Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state." (*People* v. *McKale, supra,* 25 Cal.3d 626, 633.)

Thus the unfair competition law is not a roving warrant for a prosecutor to use injunctions and civil penalties to enforce criminal laws. Its application to conduct which violates the penal law is limited to circumstances where such conduct is also a business practice. The trial court seemed concerned that if these sections were applicable in the circumstances of this case, they would equally be applicable to a streetwalking prostitute or a small-time bookie, who arguably are engaged in "business" of a criminal nature.[8] Whether any particular conduct is a business practice within the meaning of section 17200 is a question of

[6]We recognize that interpretation of section 3369 apparently was not raised as an issue in *Sakai.* Nevertheless, *Sakai* has been cited with approval by our Supreme Court for the proposition that "[e]ven though the Penal Code provides only criminal sanctions [regarding sale of whale meat], the court held the district attorney could pursue an action in unfair competition for such violations." (*People* v. *McKale, supra,* 25 Cal.3d at p. 633.)

[7]Present Civil Code section 3369 provides: "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or as otherwise provided by law."

[8]The same could be said of a heroin dealer, an example mentioned by the dissent. (See *People* v. *K. Sakai Co., supra,* 56 Cal.App.3d 531.)

fact dependent on the circumstances of each case. The possible misapplication of the law in a future case should not prevent its proper application to the present case.

The civil remedies of the unfair competition law were enacted because criminal remedies were too often inadequate to protect the public, especially where corporate defendants were concerned. (See *People v. Superior Court (Jayhill Corp.)* (1973) 9 Cal.3d 283, 288-289 & fn. 3 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191]; Review of Selected 1965 Code Legislation (Cont.Ed.Bar 1965) p. 21; Bowley, *Law Enforcement's Role in Consumer Protection* (1974) 14 Santa Clara Law. 555, 564-567.) Courts can determine on a case-by-case basis whether the defendant's conduct involves "business practice" so as to be subject to the unfair competition law in addition to the criminal law.[9]

Defendants advance several additional arguments in support of the judgment. They argue that the assessment of the civil damages provided in section 17206 would amount to a penal sanction which would violate due process of law if imposed without the full panoply of rights available in a criminal trial, such as proof beyond a reasonable doubt and the right to a jury trial. The law is well settled to the contrary under the essentially identical provisions of Business and Professions Code section 17536 (civil penalty for false advertising). (*People v. Superior Court (Kaufman)* (1974) 12 Cal.3d 421, 431-432 [115 Cal.Rptr. 812, 525 P.2d 716]; *People v. Witzerman* (1972) 29 Cal.App.3d 169, 177 [105 Cal.Rptr. 284]; *People v. Superior Court (Kardon)* (1973) 35 Cal.App.3d 710, 713 [111 Cal.Rptr. 14]; *People v. Bestline Products, Inc.* (1976) 61 Cal.App.3d 879, 916 [132 Cal.Rptr. 767].)

Defendants next argue that to impose the civil penalties of section 17206 without requiring a finding of scienter would violate the constitutional right to freedom of expression by imposing a form of strict liability which would have the effect of discouraging distribution of nonobscene matter as well as obscene matter, citing *Smith v. California* (1959) 361 U.S. 147, 153 [4 L.Ed.2d 205, 211, 80 S.Ct. 215], and *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 277-279 [11 L.Ed.2d 686, 704-706, 84 S.Ct. 710, 95 A.L.R.2d 1412]. This argument is based upon the false premise that the People would not have to prove scienter

---

[9] In this case defendants have chosen to conduct their unlawful business in corporate form, rendering application of the penal laws more difficult. They should not be heard to complain that the civil laws relating to business conduct are inapplicable too.

in the present case. On the contrary, the People's theory in this case is that defendants' business practices are unlawful because they violate Penal Code section 311.2, and thus to establish that defendants' conduct comes within section 17200 the People would have to prove that defendants "knowingly" distributed or possessed for distribution obscene matter. (Pen. Code, § 311.2.)

Finally, defendants argue that the unfair competition law does not provide "the procedural safeguards required by the First Amendment to separate obscenity from constitutionally protected speech" and that application of the statute's remedies of injunction and civil penalties would constitute an unlawful "prior restraint" on distribution of constitutionally protected material.

"It is entirely permissible from a constitutional standpoint to enjoin further exhibition of specific magazines or films which have been finally adjudged to be obscene following a full adversary hearing." (*People* ex rel. *Busch* v. *Projection Room Theater, supra,* 17 Cal.3d 42, 57; *Paris Adult Theatre I* v. *Slaton, supra,* 413 U.S. 49, 54-55 [37 L.Ed.2d 446, 454-455].) In the instant case the People's complaint seeks injunctive relief and civil penalties only with respect to specific named films and magazines. No suggestion is being made that the statute could be used to enjoin the entire operation of defendants' business, to enjoin distribution of unnamed material without a prompt final judicial determination of obscenity, or to assess civil penalties without a prompt final judicial determination of obscenity. (Cf. *People* ex rel. *Busch* v. *Projection Room Theater, supra,* 17 Cal.3d at pp. 57-59; *Vance* v. *Universal Amusement Co., Inc.* (1980) 445 U.S. 308 [63 L.Ed.2d 413, 100 S.Ct. 1156].)

In *People* ex rel. *Busch* v. *Projection Room Theater, supra,* 17 Cal.3d 42, the People's complaint sought to enjoin the exhibition of obscene films, as a public nuisance. The Supreme Court held that the complaint properly stated a cause of action under the public nuisance statutes, and that the statutes would be construed to require the necessary prior adversary hearing before the issuance of an injunction against specific named films finally determined to be obscene. (*Id.,* 17 Cal.3d at pp. 59-60.) The unfair competition statutes are to be similarly construed in this case. *Busch* similarly involved a People's appeal following a trial court's sustaining of a demurrer to the People's

complaint. The conclusion of the Supreme Court in that case is equally appropriate here: "We emphasize that the proceedings now before us remain at the pleading stage. Having determined that plaintiffs' complaint is sufficient to state a cause of action based upon a general nuisance theory, we consider it inappropriate to describe in detail the precise dimensions of the injunctive and other relief which might be suitable in this and the related cases. It is enough that the parties and the trial court recognize that substantial constitutional issues are presented in this litigation, and that care must be exercised to assure that defendants' constitutional rights are not infringed. More than this is not required." (17 Cal.3d at p. 60.)

Defendants contend that even the possibility of application of civil penalties in the circumstances of this case would constitute a prior restraint on freedom of expression because it could deter the distribution of constitutionally protected matter. There is no merit to this argument. The possibility of incarceration or fine under the penal law could also deter publication of material bordering on the obscene, but that possibility does not invalidate the criminal laws against obscenity. Although the maximum potential civil penalty may be greater than the maximum potential criminal fine, that is only a matter of degree, and in any event one of the very reasons for civil remedies is that in the case of unlawful business practices by a corporation, the criminal remedy is inadequate. What may seem a large criminal fine to an individual violating Penal Code section 311.2 may turn out to be a small civil penalty for a corporation engaged in distribution of obscenity as a business practice. (See *People* v. *Superior Court* (*Kardon*), *supra*, 35 Cal.App.3d 710, 713.)[10] The civil penalties actually imposed, if any, can be reviewed at the appropriate time. The mere possible application of civil penalties does not render the statute unconstitutional as applied to this type of business.

We conclude that under present Supreme Court authority[11] the complaint adequately states a cause of action. If section 17200 should not

---

[10]In interpreting civil penalty provisions, courts take into consideration the particular circumstances of each type of violation and the circumstances of the particular defendant. (See *People* v. *Superior Court* (*Jayhill Corp.*), *supra*, 9 Cal.3d 283, 288-289; *People* v. *Witzerman* (1972) 29 Cal.App.3d 169, 180-181 [105 Cal.Rptr. 284]; *People* v. *Superior Court* (*Kardon*), *supra*, 35 Cal.App.3d 710, 713; *People* v. *Bestline Products, Inc.*, *supra*, 61 Cal.App.3d 879, 922-924; *People* v. *Superior Court* (*Olson*) (1979) 96 Cal.App.3d 181, 196-198 [157 Cal.Rptr. 628].)

[11]*Barquis* v. *Merchants Collection Assn.*, *supra*, 7 Cal.3d 94; *People* v. *McKale*, *supra*, 25 Cal.3d 626; *People* ex rel. *Busch* v. *Projection Room Theater*, *supra*, 17 Cal.3d 42.

be construed to cover the type of "unlawful...business practice" involved in this case, further clarification should come from the Supreme Court or the Legislature.

The order of dismissal is reversed.

Hastings, J., concurred.

KAUS, P. J.—I respectfully dissent and state my reasons in summary fashion:

1. Basically, I am convinced that even if this action fits literally within the framework of section 17200 et seq. of the Business and Professions Code,[1] as written and as heretofore interpreted, the Legislature did not intend that a statute designed to regulate business practices be used to censor the contents of books, films, and other means of expression. "It has long been a 'familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.' *Holy Trinity Church* v. *United States*, 143 U.S. 457, 459 (1892)." (*Muniz* v. *Hoffman* (1975) 422 U.S. 454, at p. 469 [45 L.Ed.2d 319, 331, 95 S.Ct. 2178]. See also, *People* v. *Daniels* (1969) 71 Cal.2d 1119, at p. 1139 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]; *Estate of Getty* (1978) 85 Cal.App.3d 755, at pp. 760-761, fn. 4 [149 Cal.Rptr. 656]; *People* v. *Riddle* (1978) 83 Cal.App.3d 563, at p. 571 [148 Cal.Rptr. 170]; *Rucker* v. *Superior Court* (1977) 75 Cal.App.3d 197, at p. 200 [141 Cal.Rptr. 900]; *Westfall* v. *Swoap* (1976) 58 Cal.App.3d 109, at p. 116 [129 Cal.Rptr. 750].)

2. Section 17200 prohibits, inter alia, "unlawful...business practice[s]." While we must accept that the end result of defendants' business operations consists of wholesale violations of section 311.2 of the Penal Code, it is not alleged that defendants achieved their objective by means of any illegal business practice—a notion which relates to the "how" of doing business as distinguished from the effect.[2]

---

[1]All code references, unless otherwise noted, are to the Business and Professions Code.

[2]To illustrate: assume a merchant who sells his product by methods which scrupulously adhere to every law that tells business people how to run their shops: he engages in no combinations in restraint of trade (§ 16700), does not practice locality discrimination (§ 17040), refuses to sell below cost (§ 17043), never gives a secret rebate (§ 17045), and never engages in false advertising (§ 17500). He discriminates against

I submit that while this distinction has not been pointed up in any reported decision known to me, it is vital. Regardless how liberally the Supreme Court interpreted section 17200 in *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, at pages 108-113 [101 Cal.Rptr. 745, 496 P.2d 817], and lately in *People* v. *McKale* (1979) 25 Cal.3d 626 [159 Cal.Rptr. 811, 602 P.2d 731], we must not lose sight of the fact that section 17200 is a definition of unfair competition. Surely the concept of "competition" relates solely to the method of conducting a business, and not to the nature of the product sold or service rendered. There is nothing inherently unlawful in collecting debts (*Barquis*) or running a mobilehome park (*McKale*).

3.   Unlawfulness aside, the complaint does allege that defendants have competed unfairly. It does so, however, in the most conclusory manner.[3] Offered an opportunity to amend, plaintiffs declined. For obvious reasons we should, therefore, not be concerned with the concept of unfairness.

4. My final point is purely speculative and would be of doubtful validity as the basis for a majority opinion. Nevertheless, I cannot help wondering whether the aspect of *People* ex rel. *Busch* v. *Projection Room Theater* (1976) 17 Cal.3d 42 [130 Cal.Rptr. 328, 550 P.2d 600], which permits findings of obscenity without the benefit of a jury, would command a majority in the California Supreme Court as it is now constituted.

Respondents' petition for a hearing by the Supreme Court was denied August 21, 1980. Tobriner, J., Mosk, J., and Newman, J., were of the opinion that the petition should be granted.

---

no one on account of race, color, or creed (Civ. Code, § 51.5), and scrupulously observes the rules relating to venue when suing defaulting customers. The only legal blemish on his operation is that his product is heroin. Does he engage in an illegal business practice or is he committing serious crimes by means of otherwise legal methods of doing business?

[3]"Defendants...have competed unfairly...to the damage and injury of the public, as competitors and consumers."